UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
IN ADMIRALTY

GREAT LAKES REINSURANCE
(UK) PLC, *et al*,

    Plaintiff,

                      CASE NO. 08-CV-505-Orl-35DAB

vs.

EDUARDO VIERA MIRANDA,
*et al,*

    Defendants.

vs.

WEST HOLIDAY INSURANCE, INC.
_____/

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
### AS TO THE DEFENDANT EDUARDO VIERA MIRANDA

    COMES NOW the Plaintiff, GREAT LAKES REINSURANCE (UK) PLC, by and through its undersigned attorneys and moves for summary judgment as to the Defendant Eduardo Viera Miranda as is set forth in the pleadings and in the Statement of Material Facts Not In Dispute. This is an action in which the Plaintiff, Great Lakes Reinsurance (UK) PLC, is asking this Court to rule that its policy of marine insurance is void and affords no coverage to any party for the theft or disappearance of a vessel which is alleged to have occurred on or about December 30, 2007.

    The Plaintiff is a UK-based marine insurance company subscribing to a policy of marine insurance issued to the Defendant, Eduardo Viera Miranda, affording coverage in the amount of $130,000.00 on a 2006 33 ft Black Hawk power vessel. According to the application that Mr. Miranda signed and which was submitted

via at least three (3) separate brokers acting on his behalf, the insured vessel was alleged to have been purchased by Mr. Miranda at a purchase price of $130,000.00. On the application that was signed by Mr. Miranda and submitted via his brokers, he was represented as being the sole owner of the vessel and the sole operator. The application represented that the vessel was going to be stored right at Mr. Miranda's residence located in Deltona, Florida. Mr. Miranda was represented as having five (5) years of boating experience.

The application bearing Mr. Miranda's signature was submitted again by his brokers in order correct a couple of minor issues, but also to seek to add as an additional operator an individual named Isray Exposito Ramirez. Without making any further disclosure to the Plaintiff's marine underwriter regarding who Mr. Ramirez was or what his relationship to the vessel might be, this second application simply sought to have Ramirez insured as an additional operator, disclosing that he had only one (1) year of boating experience.

Because of his unacceptably limited boating experience the Plaintiff was unwilling to issue a policy of marine insurance on the 2006 33 ft Black Hawk with Ramirez as an authorized operator, and therefore issued Policy No. 200/658/90427 subject to an express warranty which stated on the Cover Note "Warranted Isray J. Exposito Ramirez not to operate vessel." However, since the rest of the material information apparently disclosed in the applications bearing Mr. Miranda's signature was calculated by the

2

underwriter to be an acceptable risk, the Plaintiff's marine MGA agreed to issue the policy.

Following the reported theft, and after completing an investigation into the circumstances surrounding the vessel's loss, the Plaintiff Great Lakes Re denied the claim. Great Lakes Re learned that, in fact, Isray J. Exposito Ramirez was a close friend of Mr. Miranda who had actually been seeking to purchase the 2006 33 ft Black Hawk but who had been unable to do so because of bad credit. Great Lakes Re learned that while the Defendant might have formally "purchased" the vessel for $130,000.00 in January 2007 as was represented on the application, this "purchase" was in name only as in fact what Mr. Miranda did was allow his own credit to be exploited by and on behalf of Ramirez after the latter had been unable to purchase the vessel himself because his own credit had been inadequate. Great Lakes Re has established, first via its post-incident investigation and now also via the completion of discovery in the instant litigation, that Mr. Miranda failed to disclose the material facts with regard to the purchase the vessel, and of Mr. Ramirez's involvement not only in the purchase but in the subsequent custody, storage and frequent operation of the 2006 33 ft. Black Hawk. The vessel was always intended to be the property of Mr. Ramirez, and it was Ramirez who at all times maintained custody and control over the vessel, which was never at any time kept at Miranda's residence. Miranda was aboard "his" vessel on only a single occasion, allowed by Ramirez to meet the vessel in Key West, and did not so much as

have a set of keys to what was represented as "his" vessel.

Even the threshold but critical representation made on the application to the effect that Mr. Miranda had five (5) years of boating experience, deemed by the marine underwriter to be the minimum required in order to agree to issue a policy of marine insurance, was untrue, as Miranda had absolutely no boating experience of any kind.

Notwithstanding the express warranty according to which operation of the vessel by Ramirez was prohibited, the said individual regularly and routinely operated the vessel throughout 2007 and had left the vessel tied up at a boat ramp in Miami, with the key in the ignition, when it was allegedly stolen.

The denial and the subsequent decision to proceed to litigation were premised upon Underwriters' assertion that Mr. Miranda's had obtained the policy of marine insurance only as a result of his submission of a completed and signed application which contained glaring misrepresentations and non-disclosures of facts material to the decision made by the UK-based marine underwriting manager which issued the policy. The Material Facts Not In Dispute demonstrate beyond cavil or dispute that Great Lakes Re agreed to issue its Policy no. 200/658/90427 in the amount of $130,000.00 due solely to the fact that Mr. Miranda and the brokers working on their behalf misrepresented and/or concealed material facts regarding the purchase of the vessel; Ramirez' involvement and his claim to being the owner; Ramirez's retention of control over and custody of the vessel, together with

4

his intention of operating what he considered to be his property.

Discovery has now been concluded and the Material Facts Not in Dispute demonstrate that during the application process which eventuated in issuance of the policy of marine insurance, Eduardo Viera Miranda and/or his brokers misrepresented or failed to disclose material facts. Eduardo Viera Miranda and/or his brokers misrepresented and misled the underwriters concerning circumstances critical to the underwriting decision.

The Plaintiff Great Lakes Re contends that summary judgment should be awarded based on the undisputed evidence establishing these material misrepresentations or failure to disclose material facts, and the consequent breach of the obligation under the doctrine known as *uberimmae fidei*, or "utmost good faith," a doctrine recognized as an entrenched and well established principle of the federal admiralty law.

The Plaintiff Great Lakes Re contends that summary judgment should be awarded based on the undisputed evidence establishing that the Defendant breached the express warranty in the policy which stated that Isray Exposito Ramirez was not to operate the vessel.

As set forth in the affidavit of Beric Anthony Usher, submitted in conjunction with and in support of this Motion for Summary Judgment, Great Lakes was bound by a marine insurance policy issued through authority granted to its underwriting and claims handling agent, T.L. Dallas (Special Risks) Ltd.

Mr. Usher is the Sr. Director and Underwriter at T.L. Dallas

(Special Risks) Ltd. whose tasks include supervision of personnel in the Underwriting Department, as well as review of incoming application materials submitted by the brokers acting on behalf of Mr. Miranda. It was the T.L. Dallas (Special Risks) Ltd. underwriting department which was responsible for the decision to issue Great Lakes Re's Policy no. 200/658/90427 in reliance on the representations made in those application materials.

T.L. Dallas (Special Risks) Ltd. agreed to issue Policy no. 200/658/90427 only on the basis of misrepresentations and/or concealments of material facts.

Mr. Usher's affidavit makes it patently clear why the misrepresentations and non-disclosures were utterly critical information to a marine underwriter. As the caselaw to be discussed, *infra*, makes equally clear, an award of summary judgment in favor of Great Lakes Re voiding its Policy no. 200/658/90427 is the proper relief.

<u>LEGAL ARGUMENT</u>

I.

SUMMARY JUDGMENT IS APPROPRIATE HERE
<u>SINCE NO MATERIAL FACTS REMAIN IN DISPUTE</u>

Summary judgment is appropriate where there is no genuine issue remaining as to the material facts in a case. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In addition, the federal maritime law recognizes the particularly appropriate nature of summary judgment to resolve insurance coverage questions. *See, Home Insurance Company v. Vernon Holdings*, 1995 A.M.C. 369 (S.D. Fla.

1994); *Port Lynch, Inc. v. New England International Assur. of America*, 754 F. Supp. 816 (W.D. Wash. 1991).

See also, *Talat Enterprises, Inc. v. Aetna Life & Cas. Co.*, 952 F. Supp. 773 (M.D. Fla. 1996) in which the court stated "[T]he interpretation of an insurance contract question is a question of law which may be determined on summary judgment." *Id.*, at 776.

Most crucially, where the facts are undisputed, the federal district court presented with a summary judgment involving a policy of marine insurance may resolve the dispositive issue of the materiality of the misrepresented or undisclosed facts. *See, North Amer. Specialty Ins. Co. v. Savage,* 977 F. Supp. 725, 1998 A.M.C. 769 (D. MD. 1997).

In opposing the summary judgment filed on behalf of the moving Plaintiff, it is incumbent upon the Defendant to submit competent evidence which would be sufficient to satisfy the standard of proof that would be required of him at the time of any trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). It is not sufficient for Mr. Miranda to merely contend to this Court that some issues are unproven, or that unimportant differences or immaterial issues might remain unresolved. Nor can the Defendant avoid summary judgment by arguing that the neglect or misconduct of any of the brokers was responsible for the submission to the underwriter of the false information. *See, Underwriters at Lloyd's v. Giroire*, 1998 A.M.C. 2153 (S.D. Fla. 1998); *All Underwriters at Lloyd's v. Kenney*, 1997 A.M.C. 2373 (S.D. Fla. 1997).

The material facts have been established as a result of the

very words of Eduardo Viera Miranda and Isray Exposito Ramirez themselves at their depositions. The sworn affidavit of B.A. Usher, along with the deposition testimony of the Defendant's own marine insurance broker, Jessica Tejeda, establish a record before this Court which clearly demonstrates that information was withheld from the underwriting agent that acted for Great Lakes Re. The sworn affidavit of B.A. Usher establishes what the effect of the inaccurate or withheld information was, *i.e.*, that this particular policy of marine insurance would never have been issued had full disclosure of the material facts been made.

The material facts not in dispute illustrate that fundamental and critical facts, utterly central to the underwriting decision were misrepresented to, or withheld from, Great Lakes Re's underwriting manager.

Mr. Miranda's brokers submitted an application with false information, yet the material facts not in dispute demonstrate that it was Miranda himself who actually signed that application. Even where the insured has signed the application innocently, the effect is to void coverage. *All Underwriters at Lloyd's v. Kenney, supra.*

The Plaintiff therefore respectfully submits that in view of the applicable law, the clear and unambiguous application and policy language, and the material facts not in dispute filed in conjunction herewith, this Court should grant summary judgment by determining that Plaintiff's Policy No. 200/658/90427 is void, and that the policy affords no coverage for the theft of the vessel

which is alleged to have occurred on December 30, 2007.

## II.

### MISREPRESENTATIONS OF MATERIAL FACTS AND FAILURES TO DISCLOSE MATERIAL FACTS VOID THE MARINE INSURANCE POLICY

The evidence in this case demonstrates beyond cavil that Eduardo Viera Miranda, and/or the several brokers acting on behalf of Mr. Miranda as his marine insurance brokers, obtained Policy No. 200/658/90427 from T.L. Dallas (Special Risks) Ltd. only by misrepresenting essential facts that were material to the decision to respond with a quote and thereafter to issue a policy of marine insurance. TLD, acting as the managing agent for the Great Lakes Re, agreed to issue Policy no. 200/658/90427 with a value of $130,000.00 covering the 2006 33 ft Black Hawk power vessel only because of the misrepresentations and non-disclosures with regard to (1) the purchase and the ownership of the vessel; (2) Miranda's utter and complete lack of boating experience; (3) the location where the insured vessel was going to be stored and the identity of those exercising care, custody and control over the vessel; (4) the acknowledged fact that it was Mr. Ramirez, who had been rejected as an operator, who was at all times going to be in possession of the vessel and who was going to be operating the vessel just as if it was in fact his property.

Mr. Usher and TLD would never have agreed to insure the vessel at all, on any terms, if an application had been submitted disclosing these issues as reviewed and as set forth in the

Statement of Material Facts not in Dispute filed in support of this motion for summary judgment.

Even if made unintentionally, in complete innocence or inadvertence by one of the marine insurance brokers, these misrepresentations and failures to disclose material facts have the legal effect of voiding coverage and entitling the marine insurance company to summary judgment. The caselaw to be discussed, *infra*, makes this utterly clear.

Since this is a case where the issue turns upon the legal effect of erroneous information submitted to a marine underwriter on an application, "[t]he central issue in this litigation rests upon the application of the federal admiralty principle of *uberimmae fidei*, rather than any issue of Florida state law." *Great Lakes Reinsurance (UK) plc v. Zielinski*, 2007 A.M.C. 1947, at 1949, (M.D. Fla. 2007). It has been recognized that the legal principles of *uberimmae fidei*, or "utmost good faith," are the settled and recognized law binding on all district court courts within the 11th Circuit. *See, HIH Marine Service, Inc. v. Fraser*, 211 F.3d 1359, 2000 A.M.C. 1817 (11th Cir. 2000); *Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689, 1985 A.M.C. 956 (11th Cir. 1984); *International Ship Repair v. St. Paul Fire & Marine*, 992 F. Supp. 577 (M.D. Fla. 1996) and *Great Lakes Reinsurance (UK) plc v. Arbos*, 2009 A.M.C. 334 (S.D. Fla. 2009) just the most recent case holding that the marine insurance doctrine of *uberrimae fidei* is well-established and entrenched federal precedent.

The seminal federal case on the subject remains that of

*Gulfstream Cargo, Ltd. v. Reliance Insurance Co.,* 409 F.2d 974 (5th Cir. 1969), in which the United States Court of Appeals for the Fifth Circuit stated that "[n]othing is better established in the law of marine insurance than that a mistake or commission material to a marine risk, whether it be willful or accidental, or result from mistake, negligence or voluntary ignorance, avoids the policy." *Id.,* at 980.

Since that case, other decisions from a myriad of federal district and appellate courts across the nation have agreed that the doctrine of *uberimmae fidei* is entrenched federal precedent.

*See, e.g., AGF Marine Aviation & Trans. V. Cassin*, 2008 A.M.C. 2300 (3rd Cir. 2008); *N.H. Ins. Co. v. C'est Moi, Inc.,* 519 F.3d 939 (9th Cir. 2008); *Federal Ins. Co. v. PGG Realty,* 2007 A.M.C. 1125 (S.D.N.Y. 2007); *St. Paul Fire & Marine Ins. Co. v. Halifax Trawlers,* 495 F.Supp.2d 232 (D. Mass. 2007).

This "clear rule of maritime law" recognizes that it is the insured and his agent who are in the best position to know and report on any facts or circumstances which materially affect the risk being considered for insurance:

> The standard for disclosure is an objective one, that is, whether a reasonable person in the assured's position would know that the particular fact is material. *Btesh v. Royal Ins. Co.*, 49 F.2d 720, 721 (2d Cir. 1931). To be material, the fact must be "something which would have controlled the underwriter's decision" to accept the risk. *Id.* The assured's failure to meet this standard entitles the underwriter to void the policy *ab initio.*

*Puritan Ins. Co.,* 779 F.2d at 870-71.

Cited at *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, at 13 (2d Cir. 1986).

The apposite caselaw makes it absolutely clear that the duty of disclosure which the doctrine of *uberimmae fidei* places on the insured and his broker extends even to material information which is not actually or directly inquired into on an application form. *See, HIH Marine Service v. Fraser*, *Id., 2000 A.M.C.,* at 1820.

Where the application form directly and explicitly inquires into a particular subject, a presumption arises as to the materiality of that particular question. *See, e.g., Pacific Insurance Co. v. Kent*, 120 F.Supp.2d 1205 (C.D. Cal. 2000). Moreover, cases hold that misrepresentations with respect to boating experience, and with respect to formal ownership such as in the instant matter, are by definition "material" and that even an innocent misrepresentation regarding this always critical subject will void coverage. *See, Great Lakes reinsurance (UK) plc v. Arbos, supra; Grande v. St. Paul Fire & Marine,* 2005 A.M.C. 1620 (D. Me. 2005).

Miranda and his brokers failed to make the disclosure required under the admittedly stringent but clearly applicable doctrine of "utmost good faith," and rescission of the policy obtained without such disclosure is richly merited as a result.

In the case at bar, the undisputed evidence is that T.L. Dallas (Special Risks) Ltd. would never have agreed to insure this risk at all if full disclosure had been made. It is clear from Mr.

Usher's his sworn affidavit, ***indeed it is unopposed by any expert or factual testimony whatsoever***, that the Policy no. 200/658/90427 would never have been issued but for the misrepresentations as to boating experience and where the vessel would be stored, and even more critically, but for the non-disclosure of the everything with regard to Mr. Ramirez's true and continuing interest in the vessel which the Defendant knowingly assisted Ramirez to obtain and then to continue to operate.

Neither can the Defendant avoid the effects of *uberrimae fidei* and its obligations by claiming that the failure to disclose material facts is the fault of one of the several individuals acting as his brokers. Every broker involved in the placement of this marine insurance policy was clearly acting as the agents of the prospective insured, Eduardo Viera Miranda. The cases illustrate that an insurer may void the policy even if the failure to disclose material facts was the result of actions by a person acting "on behalf of" the actual insured.   *See e.g., Royal Insurance Co. of America v. Cathy Daniels, Ltd.,* 684 F. Supp. 786 (S.D.N.Y. 1986).

The S.D. Fla. addressed this issue in granting summary judgment to the marine insurer in the *Giroire* case:

> Because the doctrine of *uberimmae fidei* requires
> an insured to voluntarily and accurately disclose
> to the marine insurer all material risks which
> might have a bearing on the underwriter's decision
> to accept or reject the insurance, or with respect
> to what premium to charge, (citation omitted),
> Giroire cannot escape this requirement by passing
> this responsibility on to his agent. Under *uber-*

*immae fidei,* it is the insured who is in the best position to know and report any facts or circumstances material to the risk.

\* \* \* \* \* \*

**The insurer is not to blame if the broker erroneously prepares the application, because the insurer issues the policy based on the application. The insurer is entitled to rely on the representations of the insured's agent.** *See, Dreiling v. Maciuszek,* 1992 A.M.C. 2482, 2488...(N.D. Ill. 1991) (in marine insurance, the broker acts as agent for the insured, not the insurer, thus boat owner is charged with knowledge that his broker possessed but failed to communicate to the insurer).

*Giroire, supra,* at 2161-62.

Consequently, even if it was one of Miranda's own agents or brokers who filled out and submitted the erroneous application materials without the said Defendant's full awareness, it is nonetheless Miranda who must bear the risk of such errors being made by his agent.

The federal caselaw on this subject is voluminous, *see e.g., Colip v. Clare,* 26 F.3d 712 (7th Cir. 1994) holding that the insurance broker's acts and knowledge are attributable to the insured; *Accord, Dickson Welding, Inc. v. Alexander & Alexander, Inc.,* 957 F.2d 1281 (5th Cir. 1992), cert. den. 506 U.S. 864 (1992); *Western World Insurance Co. v. Stack Oil, Inc.,* 922 F.2d 118 (2d Cir. 1990); *Liberty Mutual Ins. Co. v. York Hunter, Inc.,* 945 F. Supp. 742 (S.D.N.Y. 1996); *Dreiling v. Maciuszek,* 1992 A.M.C. 2482 (N.D. Ill. 1991).

Finally, summary judgment is clearly proper in these circumstances since Miranda admits that he personally received,

14

signed and returned the application form on which the misrepresentations and non-disclosures of material fact appeared, and yet he went ahead and executed that document and allowed it to be submitted to the unsuspecting underwriter far away in Yorkshire. As Judge Gonzalez stated in the case of *All Underwriters at Lloyd's v. Kenney, supra,* 1997 A.M.C. at 2374, "Defendant's claim that the omission was unintentional is irrelevant because Defendant did affirmatively sign his name to the application."

Mr. Miranda has asserted a cause of action against West Holiday Insurance, Inc., his "retail" broker, alleging that the latter has breached its duty to obtain the coverage that was sought. If the Defendant is able to show that his brokers were provided with every bit of information that they asked for, or if Miranda can demonstrate that there was some failure on the part of West Holiday Insurance, or Hull, or Houlder, then his third party action may have some merit.

However, there should be no doubt whatsoever that Great Lakes Re is entitled to avoid coverage under Policy no. 200/658/90427 because of the undisputed fact that critical misrepresentations and non-disclosures were made in order to procure this policy. These material misrepresentations and non-disclosures resulted in issuance of a policy that would not otherwise have been issued, and Plaintiff is therefore entitled to summary judgment voiding the policy.

15

III.

BREACH OF THE EXPRESS WARRANTY
VOIDS THE MARINE INSURANCE POLICY

Regardless of whether this Court applies federal admiralty law, New York state law or Florida state law to the issue, the undisputed fact that Isray Exposito Ramirez repeatedly and routinely operated the vessel constitutes a breach of the express warranty in the policy prohibiting precisely such operation, thereby voiding the policy. From the date that the policy was issued right up until the date that the vessel was reported to have been stolen, Ramirez was regularly and routinely operating the vessel in breach of the express warranty.

The policy contains a Choice of Law clause, and recent cases illustrate that such clauses are presumptively valid. *See, Mazzoni Farms v. E.I. DuPont De Nemours & Co.,* 761 So. 2d 306, at 311 (Fla. 2000) where the Florida Supreme Court stated that such a clauses "is presumptively valid and it is the [objecting party's] burden to demonstrate why it should not be enforced." *See also, Federal Insurance Co. v. PGG Realty*, 2007 A.M.C. 1125, at 1137 (S.D.N.Y. 2007) where the court stated, "...in interpreting an insurance contract, the Court should consider (1) any choice-of-law provision contained in the contract..."

In the case of *Albany Insurance Co. v. Jones,* 1997 A.M.C. 1407 (D. Alaska 1996), breach of the same type of warranty as the one presently before the bar of this Court was held to void coverage under the well established and entrenched ***federal***

admiralty law rule requiring "strict or literal compliance" with such an express warranty, with the court stating that federal "[a]dmiralty law requires strict construction of express warranties in marine insurance contracts; breach of the express warranty by the insured releases the insurance company from liability even if there is no causal connection between the breach and the loss which as occurred." *Id.,* at 1411-12.

*See also, Lexington Ins. Co. v. Cooke's Seafood*, 1988 A.M.C. 1238 (11th Cir. 1988) holding that "breach of warranty discharges the [marine] insurer from liability and deprives the assured from recourse against the insurer, whether the loss can be traced to the breach or not and even though such breach was innocently or inadvertently committed by the assured...[Citation omitted] The admiralty cases that support this principle are legion and form a judicially established and entrenched federal admiralty rule." *Id.,* at 1311.

Similarly, under the state law of New York, it is undisputed that any breach of an express warranty in a policy of marine insurance voids coverage. *Hartford Fire Ins. Co. v. Mitlof,* 2002 A.M.C. 1901 (S.D.N.Y. 2002); *Advani Enterprises v. Underwriters at Lloyd's,* 1997 A.M.C. 1851 (S.D.N.Y. 1997).

Under the statute which constitutes the state law in Florida, Fla. Sta. sec. 627.409(2), any breach of an express warranty voids coverage provided only that the breach "increased the hazard by any means within the control of the insured." Even if this Court were to insist upon resolving this breach of warranty issue

17

according to Florida state law, it is respectfully submitted the breach of warranty must still void coverage since it is manifest that operation of the vessel by Ramirez most assuredly did increase the hazard of an eventual theft. Ramirez's utter and complete lack of any previous experience in the ownership of a boat, with only one (1) year of operational experience, increased the risk of a theft in which Ramirez left the vessel in the water with the keys still in the ignition. Such a demonstration is all that is required under the Florida state statute, which (unlike statutes in several other states) states no requirement of any causal connection between the breach and the loss, and it is assuredly sufficient in this situation to void coverage under Florida state law.

Therefore, as noted above, the undisputed facts establish that the policy had an express warranty which was breached by Ramirez's prohibited operation of the insured vessel, and summary judgment for that breach is proper regardless of the law which this Court would rely upon in order to adjudicate that motion.

IV.

### BECAUSE THE INSURANCE BROKERS ACTED AS AGENTS FOR THE INSURED, THEIR KNOWLEDGE AS WELL AS THEIR ACTS AND OMMISSIONS ARE ATTRIBUTABLE TO THE INSURED

The undisputed facts clearly demonstrate that **_all_** brokers in this matter acted in the traditional manner as agents of the insureds, and under the familiar principles seen repeatedly in similar marine insurance cases, the alleged acts of the brokers in

18

providing material misinformation to the underwriter must result in summary judgment for the Plaintiff. In addition to the clear statement of agency on behalf of the insured which is set forth in the body of Great Lakes Re's policy, the jurisprudence clearly holds that **_all_** of the various brokers acted as agents for Eduardo Viera Miranda.

As set forth in the sworn affidavit of Mr. Usher, Great Lakes Re and UK-based underwriting manager, T.L. Dallas, were careful to avoid creating the type of situation in which such brokers might be mistaken to be agents of the marine insurer rather than of the insured. None of the brokers ever had any authority to bind Great Lakes Re, and no broker was able or authorized to do anything other than forward Quotation requests to T.L. Dallas (Special Risks) Ltd. and then wait for the latter to issue the agreement that would then result in the issuance of a Great Lakes Re policy. With regard to Jessica Tejeda and West Holiday Insurance, the "retail" broker with which Miranda actually interacted in order to sign the application containing the misrepresentations of material facts, Great Lakes Re's managing agent had no relationship and no contact whatsoever.

The lack of any authority to bind is dispositive of issue of for whom a marine insurance broker acts. _See, e.g., Marsh & McLennan of Cal. V. City of Los Angles_, 131 Cal.Rptr. 796 (1976).

Where the marine insurer is careful, as Great Lakes has been here, to guard against any inference or suggestion of an agency

relationship with one of the brokers with which it does business, the courts will enforce the traditional legal regime under which such brokers act as agents of the insured. *See, Federal Insurance Co. v. PGG Realty*, 2007 A.M.C. 1125 (S.D.N.Y. 2007).

Under the foregoing circumstances, it is virtually a universal rule in the law of marine insurance that the different types of brokers that assist insureds seeking insurance in the North American and the British insurance markets act as the agents **_solely_** of the insureds. *See, Markel American Insurance Co. v. Madonna*, 2006 A.M.C. 1758 (D. Mass. 2006); *Jefferson Insurance Co. v. Cassella*, 2004 A.M.C. 1443 (E.D.N.Y. 2003); *Jefferson Insurance Company v. Huggins*, 2000 A.M.C. 2357 (N.D. Tex. 2000); *Underwriters at Lloyd's v. Giroire, supra*; *Dreiling v. Maciuszek, supra*; *Washington Int'l Insurance Co. v. Mellone, supra*.

*See also,* Parks, *The Law and Practice of Marine Insurance and General Average*, (1987) Ch. V, at p. 138 *et seq*; Vol. 3 *Couch on Insurance* (2d ed.) sec. 25:95; 43 AmJur2d *INSURANCE*, SEC. 113 (1982).

Accordingly, the actions and the omissions of each and every broker involved in seeking and obtaining Policy No. 200/658/90427, are attributable against Mr. Miranda, and cannot avoid an award of summary judgment to the marine insurance company because of the breach of the obligations imposed upon the insured under the established principles of *uberimmae fidei*.

With regard to the breach of warranty issue, completely

dispositive if this issue must be the fact that Ms. Tejeda of West Holiday Insurance acknowledged in her deposition that the said retail broker did indeed receive the Cover Note on which the express warranty was explicitly and unambiguously set forth. Even if Mr. Miranda were to assert that he was unaware of the express warranty or that it had not been provided to him, his own his broker has already admitted to having received the document on which the warranty is set forth, and the caselaw illustrates that such knowledge on the part of the broker, acting for the insured, will be imputed to the insured.

In the case of *Jefferson Insurance Co. v. Cassella,* 2004 A.M.C. 163, *revised at* 2004 A.M.C. 1443 (E.D.N.Y. 2003), the insured insisted that he had never received the policy containing an express warranty indistinguishable from the one in Plaintiff's policy and therefore could not be held to have breached that provision by having allowed his brother to bring the vessel to a repair yard. Because the evidence showed that at least one of the two brokers assisting the insured knew that the policy contained the express warranty, that knowledge was imputed to the insured and summary judgment was awarded to the marine insurers for the resulting breach. The court stated;

> ...[T]he Court concludes that Stieglitz's knowledge is imputable to Michael Cassella and that the knowledge was effective to put him on notice of the Endorsement. These conclusions are made solely upon the undisputed evidence of the relationship between Michael Cassella and Stieglitz and the knowledge possessed by Stieglitz. Therefore, the Court

grants summary judgment to Plaintiff on the
issue of first party coverage. The Court real-
izes that this is a harsh result for Michael
Cassella. After all, the parties have identi-
fied no evidence that the insured received
any actual notice from Stieglitz, Fox nor
Plaintiff of the restrictions instituted by
the Endorsement. Nonetheless, the law on
Michael Cassella's imputed knowledge is
clear and the outcome of this motion is
inevitable.

*Jefferson Insurance Co. v. Cassella, supra,* 2004 A.M.C. at 1447.

The situation is equally clear in the instant matter, where

the undisputed facts demonstrate that West Holiday is a standard

retail broker acting as the agent for Miranda, and where Ms.

Tejeda confirmed that West Holiday did indeed receive the Cover

Note in which the express warranty appears on Page 2 of that Cover

Note. Just as in the *Cassella* case, the knowledge of the broker

acting as the agent of the insured is imputed to the latter.

<u>CONCLUSION</u>

FOR THE REASONS SET FORTH, PLAINTIFF'S
POLICY IS VOID AND AFFORDS NO COVERAGE
FOR THE LOSS OF THE DEFENDANT'S VESSEL


Dated:      July 7, 2009
            Tampa, Florida

                          BANKER LOPEZ GASSLER PA
                          Attorneys for Plaintiff
                          501 East Kennedy Boulevard
                          Suite 1500
                          Tampa, FL 33602
                          Tel (813) 221-1500
                          Fax (813) 222-3066


                          By:  /s/ Allen von Spiegelfeld
                               ALLEN VON SPIEGELFELD, ESQ.
                               FLA. BAR NO. 256803

GOLDMAN & HELLMAN
Attorney for Plaintiff
800 S.E. 3rd Avenue
4th Floor
Fort Lauderdale, FL 33316
Tel (954) 356-0460
Fax (954) 832-0878


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7TH day of July 2009 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to each of the following:

Rob Cook, Esq.
Rob Cook Attorney at Law, P.A.
5547 A1A South, Suite 111
St. Augustine, FL 32080

Francis H. Sheppard, Esq.
Rumberger, Kirk & Caldwell, P.A.
300 South Orange Avenue
Suite 1400
Orlando, FL 32801


BANKER LOPEZ GASSLER PA
Attorneys for Plaintiff
501 East Kennedy Boulevard
Suite 1500
Tampa, FL 33602
Tel (813) 221-1500
Fax (813) 222-3066


By: /s/ Allen von Spiegelfeld
ALLEN VON SPIEGELFELD, ESQ.
FLA. BAR NO. 256803